I'd like to reserve two minutes, if I may. Thank you. You'll have to keep track of your own time. Okay. Good morning. May it please the Court. Cory Ferrentino on behalf of Appellant Petitioner Christopher Diep. The evidence in this case at trial was not overwhelming as to Mr. Diep. There was no identification of him at the scene where the shooting occurred. There was no identification of him in any of the cars that were allegedly involved at the time of the shooting. The cooperators for the prosecution from the previous trial identified where one of the cooperators was identified as the actual shooter in the case by witnesses who were not disclosed or discovered. But it was never the prosecution's theory that your client was the shooter. Was it their theory? It was not their theory. Their theory was aiding and abetting. And I think more likely it was natural and probable consequences. And I think the prosecutor indicated in our trial issue didn't know who committed the shooting. Right. But I do think that's And at Mr. Vu's trial, San was identified as the shooter by those other witnesses, and he was convicted. No, San, the charges were dismissed against San. Against San, I'm sorry. But at Vu's trial, where these witnesses appeared, he was convicted. That's correct. But that's why the suppressed evidence is so critical. Because in Vu's trial, the prosecutor argued that it was recent fabrication or out of fear that the victim's friends out of the blue identified Mr. San as the shooter and Mr. Tan as the driver. And we know that they were the driver and the passenger in that particular car because they both admitted to it to the police and one to a principal. Counsel, I struggle with prejudice. The superior court decided in its state habeas that had those two witnesses testified, it likely wouldn't have made a difference because Mr. Vu was convicted anyway. So just in the interest of fairness, I want to tell you, here's my scorecard. Okay. Because I want to give you every opportunity to respond. My concern is I'm just not sure it was even exculpatory as to him. The jury had the cell phone records of your client that put him all in the vicinity of what was going on, at the party and near the shooting scene. The witnesses said that Vu, Tan, and Diep left the party to roll to the Ice Cafe. Tan was Diep's best friend, or at least very close friend, and there was the concern about Minot Lee's avenging his earlier murder. Vicky Bui testified that Diep said the gun is in Ken's house. There's shaky evidence putting your client in the black car. I'm not sure why he needed to be in the black car given the charge of aiding and abetting the phone records and the testimony about where to find the gun. And, in fact, it seems to me it might have been not even exculpatory because ultimately the person he was talking to on the phone, Tan and Sang, probably did have the gun if you believe the two witnesses' testimony, the testimony of Flores and Nguyen. So can you help us with prejudice? I think that I can. Vicky Bui was a cooperator. She testified. If you look at her testimony in both Vu and Diep's trial, she's inconsistent on numerous grounds. She's the only one that says that she heard Diep say the gun was at Ken Tan's as he's speaking to Ken Tan, which is a nonsensical statement. But it's not. When you trace that one back, it's a matter of syntax. So the jury heard her say that your client identified where to get a gun. Well, and that may be the case, but she is the only one that heard that. She was a cooperator. The other thing is there was testimony that not everybody had phones and that phones were often borrowed. And, in fact, whenever Vu was looking for Mr. Diep, he called Vicky Bui's phone. He didn't call Diep's phone. Can you say that again? Whenever Vu tried to locate Mr. Diep, he called Vicky Bui's phone on two occasions. The testimony from Mendoza and from Vicky Bui were that phones were borrowed all the time. Not everybody had phones. There's no evidence that Christopher Diep was the one on the phone. Nobody recognized his voice. But there was no specific evidence that he had loaned his phone to someone else on that day either. I would say there is, because why is Vu calling him on Bui's phone if he has his own phone? So I think there actually is some evidence that he didn't have his phone on him at the time. Nobody placed him in any of the cars. The only person who said he left with Tran and Diep. So, counsel, again, why does he have to be in the car? And he doesn't have to have been the shooter in order to be convicted. So if you can focus on those points. Your client doesn't have to have been in the car. Well, obviously, if the statement, if you believe the statement that Vicky Bui said, but I think this is the critical thing about the suppression. The police, I believe, suppressed the identification of the driver of the car in the yearbook because they have a problem if Thanh and San are the driver and the shooter because they didn't have any gang background. Whereas Diep, Vu, and Tran did. They're going to have a really difficult time getting a natural and probable consequence theory past the jury without a gang expert indicating that this is what gang members do. So to argue that non-gang members committed target crime and it's foreseeable that someone would be murdered is much more difficult. The suppression of this evidence occurred immediately after the shooting. The officers in the report did not identify who was the victim's friend, pointed out in the yearbook that it was Ken Thanh. They didn't add to the report that he was 100% certain that the Acura Integra was at the shooting, and that was the car he had seen earlier in the evening circling Ice Cafe. That evidence was buried, and I think it was done intentionally because gang officers and gang DAs know that natural and probable consequences is the easiest way for them to prove a case like this. And that's how they're going to get the widest net, and they're going to get the most people. But you don't have that. When you look at the evidence as to Christopher Deeb, it's all circumstantial, and it's actually very thin. I mean, there is no evidence that he said anything to anyone. Vu was a parent. Well, there is. The jury didn't have to believe Vicky Bui, but they could have, right? There is that one statement. I misspoke. I'm sorry. But there's no statements like Vu where Vu said to Vicky Bui, we read the movie on Friday night or don't tell anybody if anything comes up. There's nothing showing any consciousness of guilt. Vicky Bui also testified that it was common for her to rent motel rooms for these guys. One of the friends didn't have a place to stay, and then when they wanted to stay together she would rent them a motel room. So there really wasn't any consciousness of guilt, the fact that two days later they went and stayed in a motel room. The gun was found in the middle of Beach Boulevard. I mean, that's really, it's buried in there. But when you look at the record, it makes it sound like it was found in some obscure place that only these individuals. It sounds like it was found in the street. Yeah, in the middle of the street. And this is in Westminster Garden. But why does that matter? Well, at some point there's indication cell site tower evidence that there's some kind of a path. I see. But I think that if you go back to whether or not, we don't have evidence that Deep was actually using his phone. And I wouldn't make that argument unless the evidence supported the fact that two witnesses, government witnesses, said that phones are borrowed. So the issue, as the courts pointed out, is prejudice and whether or not this evidence was material. It's the same standard under Brady or IAC. I do think the suppression issue is important, but I think the court can get to the issue either way. But I think the suppression issue really shows what the government, why we have two different trials. And the problem with the Superior Court opinion in the RIT proceeding is that the Superior Court did have some of the information that was suppressed. That court had a transcript of the audio interview where the victim's friend said, I'm 100% certain that the Acura was the car that was at the shooting. The shooter got out and was 10 feet away from the car. I saw him. And it's the same car that was circling ICE earlier when we were hanging out at ICE. The Superior Court completely ignored all of those facts. So that would be an unreasonable interpretation or application of the law to the facts. I just want to ask something. So I guess the state argues, and I think the Superior Court opinion said, well, all of this evidence, whether you go under the suppression theory or you go under the IAC theory, came in in Vu's trial and Vu was convicted anyway. And they used that as one of the factors as to why Deep wasn't prejudiced by the absence of this information. How do you respond to that? It didn't all come in at Vu's trial. When this surprise identification was made of the government witness of the shooter, the DA came in and said, well, were you afraid? You haven't said this before, and were you afraid? When the DA or the prosecution had in their hands interviews of these witnesses the day after the shooting or hours after the shooting, none of that evidence came in. That evidence would have corroborated their in-court ID, corroborated the in-court ID of the shooter. So in other words, just to be clear, my understanding of your answer to Judge Wardlaw's question is that what came in is the two boys' testimony, but not the other evidence to show that the boys have been testifying consistently. They've been interviewed earlier and said the same thing earlier. Is that your answer? Yes, and it's critical because this is a gang case. Fear is something that everybody is feeling in the courtroom and the jurors. And for a prosecutor to get up and say, are you afraid, is implying that that's a recent fabrication, and that's why they're saying it. They also said they saw Mr. Sand in the hallway. They recognized his spiky hair. There was critical corroboration that not only existed and Deep's attorney didn't have, but the police made an effort to bury it, in my opinion. Counsel, you have used all of your time, but we'll give you a minute for rebuttal since we asked a few questions. Thank you very much. Good morning. May it please the Court. Lisa Jacobson, Deputy Attorney General for the Respondent. The state courts reasonably rejected both the Brady and the Strickland claim, turning first to the Brady claim. The prosecutor did not improperly suppress evidence in this case. The testimony from Boo's trial was a public record that defense counsel could have accessed if he wanted to. Similarly- But did the counsel have access to the interviews and the identification of the people in the yearbook? The only thing that was not disclosed was that Tone was the person that Flores identified in the yearbook. But what was disclosed was the page number, the row number, and the position number of the person that Flores identified. And so defense counsel had enough information to go and do exactly what habeas counsel did, and that is go to the high school and get the yearbook and turn to the page, the row number, and the position number to see that Tone was the person that- So what exactly wasn't, in answer to Judge Wardlaw's question, what exactly wasn't produced? The only thing, well, what wasn't produced was the person that- No, no, no. What wasn't produced? You're telling me the fact. What record? Did they have the transcript, the video? What did they have? They had the audio tapes of the police interviews and a police report, and those said the location of the person that he identified in the yearbook, but they don't say that the person is, in fact- But I'm trying to figure out what was withheld. I understand that- The only thing that was withheld was that Tone was the actual person. No, counsel, you're not answering my question. I get that they didn't connect the dots or do their own homework, but it sounds like the materials that were in possession of the state were produced. Is that right? Yes, Your Honor. Because there was nothing withheld. Correct, Your Honor. Okay. Thank you. So there was no suppression here, and because there was no suppression, there's no Brady error. The state courts also reasonably rejected both the Brady and the Strickland claim based on lack of prejudice, and much of the reasons that this court has already gone over. Like the theory of the prosecution's case was that Deep was liable as an aider and abetter. There was compelling evidence to support the theory. The identifications of Flores and Min of San as the shooter were problematic and that neither identified him before trial, and both saw him in the courtroom just before they testified. And I would also point out- What do you mean neither identified them prior to trial? Neither identified San as the shooter before trial. Okay, but the earlier- At Vu's trial. What was concerning, I think she's got a point, when she argues that not everything came in, at Vu's trial the boys testified and they testified consistently with their pretrial identifications and the jury didn't hear that. Vu's jury didn't hear that. The jury did hear some of that, Your Honor. During the cross-examination of BF, defense counsel elicited testimony from Flores that he had told the police that the shooter had spiky hair and that he was 100% certain that the Acura Integra that he saw at the scene was the same Acura Integra that was at ICE earlier that evening. I think that's different than what's in the briefing and it's helpful. Can you give me the record site? Yes. Sorry about that. Okay. I have it as a docket entry 21-7 at pages 95 and 96. Thank you. I did have a question about the cell phone records. There was, as counsel points out, there was considerable evidence that cell phones were passed around from person to person and that not everyone had their own cell phone. So how strong is the cell phone location evidence in placing Mr. Deep at the scene of the crime and at the scene of the throwing away of the gun? I think when you couple it with Bui's testimony that all three men left Tran's house at the same time and J.R. Mendoza's statement to the police that all three left at the same time and Deep's motive to do the payback, be involved in a payback killing, that that's sufficient. And also Boo's driving the car and there's a high volume of phone calls and it would be hard, particularly I think this was a while back, to be on the phone that much while you're driving and chasing a car. Well, it's interesting the way you phrased it, which is that it's sufficient. And I don't think this is a challenge to the sufficiency of the evidence but only to the question whether there was prejudice. Even though there was sufficient evidence, whether it might have come out differently had additional evidence been adduced. I would argue that it's actually compelling evidence, Your Honor, that Deep was involved in this. But that's not all we have here. We also have the problems with BF and BM's identification and the fact that Boo's jury heard basically the same evidence against him yet they still convicted him. So we have here more than just the strength of the evidence in this case. We have another trial where substantially similar evidence was presented plus the testimony of BF and BM, yet they still convicted Boo. And for all of these reasons, the evidence that was not disclosed or presented was not prejudicial. And unless this Court has any additional questions for me, we ask that this Court affirm the District Court's denial of habeas relief. Thank you. I don't believe we have additional questions. Ms. Ferrentino, you may have a minute for rebuttal. I'm going to try and speak quickly. I think by transferring a due diligence argument to the defense is improper and it's contrary to Supreme Court law under Amando v. Gonzalez, this Court's decision. It abrogates the prosecution's duty to disclose the Brady information. The information at trial was not the same in Boo's trial. Even the identification that he was 100 percent certain the car was the black Integra, there was no corroboration of that, and that corroboration existed in the report Sorry, it wasn't in the police report. It existed in the transcript and the audio of that interview. The other thing is there are materials that were not presented to the defense. Mr. Flores looked at yearbook. He had a yearbook in front of him. There was no photograph of the yearbook. I dug through everything and I could find, knowing that I'd find that page and I couldn't find it. And nowhere did it identify what high school he was looking at yearbook. I mean, a search had to be done in various high schools to figure out what year they were and figure out where in the photograph he was based on that. All the police had to do was take a photocopy of that yearbook and include that. The Court's right. The standard is much lower than I think the people are arguing in this case. And I think there was some other question about the record. Counsel, you have exceeded your time, and we will take a careful look at the record. Thank you. The case just argued is submitted, and we appreciate the helpful arguments from both counsel.
judges: Wardlaw, Graber, Christen